UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON C. AKEMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04748-SEB-DML |
| | ) |
| WEXFORD MEDICAL, | ) |
| | ) |
| Defendant. | ) |

**Order Granting Motion for Summary Judgment**

Plaintiff Jason Akemon alleges that Wexford of Indiana, LLC, was deliberately indifferent to his serious medical needs by denying two requests for an MRI. He believes that the denial was rooted in Wexford's custom or policy of providing medical care based on financial rather than medical needs. The defendant moves for summary judgment. For the following reasons, the defendant's motion is **granted**.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

1

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court may rely only on admissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016). Inadmissible evidence must be disregarded. *Id.*

The Court considers assertions in the parties' statements of facts that are properly supported by citation to admissible evidence. S.D. Ind. L.R. 56-1(e). To the extent Mr. Akemon has failed to rebut assertions of fact in the motion for summary judgment, those facts are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district court may apply local rules to deem facts unopposed on summary judgment). Additionally, the Court has no duty to search or consider any part of the record not specifically cited in the statements of facts. S.D. Ind. L.R. 56-1(h).

## II.   FACTUAL BACKGROUND

Plaintiff Jason Akemon was at all relevant times an inmate incarcerated by the Indiana Department of Correction ("IDOC") and housed at the Correctional Industrial Facility ("CIF") or the New Castle Correctional Facility ("New Castle").[1] Wexford of Indiana, LLC, was at all relevant times the medical provider for IDOC inmates.[2]

---

[1] The IDOC website reflects that Mr. Akemon was released to the New Castle Parole District on or about September 9, 2021.  *See* "Offender Search," *Indiana Department of Correction*, https://www.in.gov/apps/indcorrection/ofs/ofs (last accessed Dec. 29, 2021).  Mr. Akemon has not provided the Court with updated contact information.

[2] The **clerk is directed** to update the defendant's name to "Wexford of Indiana, LLC."

2

### A. The Original Injury

In June 2015, Mr. Akemon injured his left knee while playing beach volleyball at New Castle. Dkt. 47-1 at 29 (Akemon Depo.). The injury was treated with cold and hot compresses and pain medication, but after several months of persistent pain an x-ray was taken. *Id.* at 30−32. Based on the results of the x-ray, Dr. Bruce Ippel requested an MRI. *Id.* at 33. The request was approved, and the MRI revealed a medial meniscal tear. *Id.* at 33−34.

Mr. Akemon participated in two sessions of physical therapy and then underwent orthoscopic surgery on his left knee in January 2017. *Id.* at 35. Specifically, he received an arthroscopic partial meniscectomy and an arthroscopic chondroplasty at Reid Hospital Orthopedic Clinic.[3] Dkt. 47-2 at ¶ 12. Mr. Akemon participated in additional physical therapy sessions after the surgery. Dkt. 47-1 at 41. He felt better for several months after the surgery before pain started to return. *Id.* at 39.

Mr. Reid was released from incarceration in October 2017 and continued to receive care from an orthopedic specialist at Reid Hospital. *Id.* at 16, 42−43.

### B. Emergent Pain upon Reincarceration

Mr. Reid violated his parole in May 2018 and was sent back to IDOC. *Id.* at 16. He was first sent to CIF. *Id.* at 18.

On June 14, 2018, Mr. Akemon reported that he was suffering from "extreme pain" in his left knee and that it was popping and grinding and affecting his mobility. Dkt. 50-2 at 2. The nurse provided him Tylenol and referred him to the doctor for further assessment. *Id.* at 4. An x-ray was

---

[3] A partial meniscectomy is the surgical removal of part of a torn meniscus. "Meniscectomy for a Meniscus Tear", *University of Michigan Health*, https://www.uofmhealth.org/health-library/uh2055 (last visited Dec. 28, 2021). Chondroplasty is the surgical removal of damaged cartilage. "What is a chondroplasty?," AOA Orthopedic Specialists, https://www.arlingtonortho.com/conditions/knee/knee-arthroscopic-chondroplasty/ (last visited Dec. 28, 2021).

taken on June 25, which showed mild degenerative change but no acute bony abnormality. *Id.* at 11. On June 28, Mr. Akemon was approved for a bottom bunk pass due to his morbid obesity. *Id.* at 37.

On August 9, Dr. Savino put in a request for Mr. Akemon to receive a cane. *Id.* at 13. Dr. Mitcheff, Wexford's Regional Medical Director, denied the request but provided Mr. Akemon a one-month lay-in from work and recreation and approved the issuance of crutches. *Id.* At a follow-up visit on September 14, Mr. Akemon reported no improvement. *Id.* at 17. He had lost some weight, and Dr. Savino recommended that he continue those efforts. *Id.*

On October 23, Mr. Akemon had another appointment with Dr. Savino where he informed her that his orthopedic specialist had recommended additional possible intervention after his 2017 surgery. *Id.* at 38. Dr. Savino submitted a request for an MRI and another request for a cane. *Id.* at 41, 84. Dr. Mitcheff reviewed the request and the accompanying notes, which included the results from the June x-ray, a description of his knee pain, and the medications he was taking for pain management, including Mobic, Tylenol and Toradol. Dkt. 47-2 at ¶¶ 13−16. Based on the review, Dr. Mitcheff denied the MRI request and instead recommended onsite care consisting of four physical therapy appointments and a possible cortisone injection. ¶ 17.

Mr. Akemon received physical therapy in November 2018. *Id.* at ¶ 18. At the conclusion of the four sessions, the physical therapist noted that the physical therapy did not benefit Mr. Akemon. Dkt. 50-2 at 106. She recommended further diagnostics or a referral to an orthopedic specialist for treatment options and, at minimum, a cane. *Id.* Mr. Akemon's bottom bunk pass was renewed, and he was also placed on a low-calorie diet. Dkt. 47-2 at ¶¶ 19−20. He was also issued a cane. *Id.* at ¶ 21.

Another x-ray was taken on December 10. Dkt. 50-2 at 116. That x-ray revealed no acute fracture or dislocation, no evidence of joint effusion, and unremarkable soft tissue, but it did indicate "mild tricompartamental osteophyte formation."[4] *Id.* at 118. Dr. Savino submitted another request for an MRI on December 12, in which she described the x-ray results and previous efforts at conservative treatment, including a joint injection that had reduced his pain for only a day or two. *Id.* at 122−25.

Dr. Mitcheff reviewed Dr. Savino's second MRI request on December 13. Dkt. 47-2 at ¶ 26. He went over the December x-ray, the physical therapy reports, and Mr. Akemon's medical records, and he spoke with Dr. Savino. *Id.* at ¶ 27. Based on his review, he denied the request for the MRI and instead recommended an intra-articular injection (an injection placed directly into the joint to relieve pain), a knee immobilizer, and further education on the need for weight reduction. *Id.* at ¶¶ 28−30. It was Dr. Mitcheff's opinion that Mr. Akemon's morbid obesity was an aggravating factor in his knee pain. *Id.* at ¶ 31.

Over the next two months, Mr. Akemon received the treatment recommended by Dr. Mitcheff. *Id.* at ¶¶ 32−34. After December 18, 2018, no other medical provider submitted an MRI request for Mr. Akemon's left knee. *Id.* at ¶ 37.

Wexford does not maintain an express written policy of providing medical care based on financial rather than medical concerns.[5] *Id.* at ¶ 8. During the course of his tenure as Regional

---

[4] Osteophytes, also known as bone spurs, are smooth, bony growths, usually near joints that develop over time in individuals with arthritis or joint damage. "Bone Spurs (Osteophytes)", *Cleveland Clinic*, https://my.clevelandclinic.org/health/diseases/10395-bone-spurs-osteophytes (last visited Dec. 28, 2021).

[5] Mr. Akemon stated in his response that Wexford refused to provide him relevant policy and procedure documents discussing what factors Wexford staff rely on to approve or deny outpatient diagnostic testing. Dkt. 50 at 3, ¶ 5. Mr. Akemon had filed a motion to compel requesting such documents. Dkt. 44. Wexford responded that they belatedly sent Mr. Akemon a copy of a policy titled, "UM-005 Routine Consult Request" and otherwise objected to the request as overly broad. Dkt. 45 at 2. Mr. Akemon did not file a

5

Medical Director at Wexford, Dr. Mitcheff has regularly reviewed and approved requests for outpatient imaging, including MRIs. *Id.* at ¶ 10. Dr. Mitcheff approves requests for MRIs when he believes they are medically necessary. *Id.* at ¶ 11. In Dr. Mitcheff's opinion, the medical care Mr. Akemeon received concerning his left knee pain were reasonable, appropriate, and complied with the applicable standard of care. *Id.* at ¶ 35.

> Mr. Akemon sued Wexford because he felt
>
> that when a provider that is employed by Wexford had made multiple requests for an MRI on [his] left knee and every single request [had] been denied by Dr. Michael Mitcheff and returned with an alternative treatment plan, which [he had] followed, there is negligent indifference in the situation because if multiple requests [were] being made by various providers, obviously there's—should be something done about that because there's obviously something wrong and nothing is being done, other than being brushed to the side.

Dkt. 47-1 at 21−22. Besides the two MRI requests, Mr. Akemon could not identify any medical treatment that was denied due to financial concerns. *Id.* at 61−62. Mr. Akemon has no evidence that other inmates' requests for diagnostic imaging were denied because medical privacy laws prevented him from obtaining other inmates' medical records. Dkt. 50 at 5, ¶ 5.

### III.   DISCUSSION

"Under the Eighth Amendment, prison officials are responsible for providing healthcare to incarcerated persons who cannot obtain healthcare on their own. To prove a violation of that right, a plaintiff must prove that a defendant actually knew of a serious health need and acted with deliberate indifference to the plaintiff's suffering." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Because Wexford is the only defendant, Mr. Akemon's claim "proceeds under the theory of municipal liability announced in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which [the Seventh Circuit has] held applies in § 1983 claims

---

reply indicating that the belated policy provided an insufficient response to his discovery request, so the Court denied the motion as moot. Dkt. 46.

brought against private companies acting under color of state law." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir 2019) (internal quotation and citation marks omitted). To prevail on a *Monell* claim, Mr. Akemon must show (1) that he received constitutionally inadequate medical care (2) that was caused by a Wexford policy, practice, or custom. *Id.*

Mr. Akemon cannot meet his burden. First, he has not shown that Dr. Mitcheff was deliberately indifferent to his serious medical needs by denying the two requests for an MRI. "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* "[A]nd the decision whether medical imaging should be used is 'a classic matter for medical judgment.'" *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Further, deliberate indifference "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources*, 982 F.3d 451, 458 (7th Cir. 2021) (internal quotations omitted). Although Dr. Mitcheff denied the two requests for MRIs, he approved and directed a conservative course of treatment including physical therapy, a knee brace, crutches, and a lower bunk pass. Mr. Akemon has produced no evidence that this alternative treatment plan demonstrated a lack of medical judgment or concern.

Second, even if the Court were to find that Dr. Mitcheff's denial of two MRIs evinced deliberate indifference, Mr. Akemon has failed to show that a Wexford policy, custom, or practice was the driving force behind the violation. Wexford does not have an explicit policy directing the provision of medical care based on financial concerns. And Dr. Mitcheff testified that he approves

requests for MRIs when he deems them medically necessary. Dkt. 47-2 at ¶ 11. Mr. Akemon's evidence consists of only his personal experience in having two requests for an MRI denied. "While it is not impossible for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, it is necessarily more difficult because what is needed is evidence that there is a true [corporate] policy at issue, not a random event." *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) (cleaned up); *Daniel v. Cook Co.*, 833 F.3d 728, 734 (7th Cir. 2016) (To prove a *Monell* claim, the plaintiff "must show more than the deficiencies specific to his own experience, of course."). Second, two denials fail to show a pattern or custom. *Hildreth*, 960 F.3d at 427 (finding that three instances of prescription delays over 19 months fail to qualify as a widespread unconstitutional practice and "acknowledg[ing] that the frequency of conduct necessary to impose *Monell* liability must be more than three.").

No reasonable juror could find that Wexford was deliberately indifferent to Mr. Akemon's serious medical needs by twice denying a request for an MRI. Accordingly, the motion for summary judgment must be granted.

## IV.     CONCLUSION

The **clerk is directed** to update the defendant's name to "Wexford of Indiana, LLC" in place of "Wexford Medical."

For the foregoing reasons, Wexford's motion for summary judgment, dkt. [47], is **granted**. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date:  1/5/2022

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON C. AKEMON
197469
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel